UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

MSP RECOVERY CLAIMS, SERIES LLC,                    CASE NO.  20-cv-24419
and MSPA CLAIMS 1, LLC,

   Plaintiffs,

vs.

HORACE MANN INSURANCE COMPANY and
HORACE MANN PROPERTY & CASUALTY
INSURANCE COMPANY,

   Defendants.

_____/

**<u>DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT</u>**

Plaintiffs are a group of collection agencies formed for a singular purpose -- to attempt to recover medical expenses on behalf of Medicare Advantage Organizations ("MAOs") and other related entities. They broadly assert, on behalf of themselves and a putative nationwide class, that they are assignees of claims that originally belonged to MAOs and other related entities and that Defendants are liable for allegedly failing to make necessary primary payments to Plaintiffs' assignors.

This case is by no means unique. This plaintiff group has sued the entire insurance industry on this theory in hundreds of cases going back at least five years. Since they are suing the entire industry, these Plaintiffs make no distinction between the largest carriers in their sights and extremely small insurers like these Defendants, who serve and primarily insure educators and have only a small share of the market both in Florida and nationwide. Notably, out of all these hundreds of cases, not one has been certified as a class action. Nonetheless, when these cases have been allowed past the pleading stage, these Plaintiffs have propounded massive discovery, requiring extremely burdensome and costly litigation steps by the defendant insurers and substantial ancillary motion practice. This is precisely the type of *in terrorem* use of class actions that has been decried by many courts, including the Eleventh Circuit.

Plaintiffs should not be allowed to proceed in this fashion, and their action should be dismissed, for two central reasons. First, Plaintiffs fail to plead a sufficient basis for imposing liability on Defendants as a matter of law. In order to state a claim under the Medicare Secondary Payer Act ("MSP Act"), Plaintiffs are required to plead and prove that Defendants are responsible for the medical expenses Plaintiffs allege Defendants should have paid. The pleadings here, by contrast, fail to do anything other than make unsupported, conclusory statements. Second, Plaintiffs' class action claims necessarily fail as a matter of law because, as

multiple courts across the country have already held, these sorts of suits involve only predominating individualized issues.  This is because resolution of these suits directly requires a claim-by-claim assessment of the reasonableness and necessity of each of the medical bills and charges in question, as well as a specific determination of whether each expense described in the bills was actually related to the accident which supposedly caused them.  Class treatment of such claims -- especially on a nationwide basis – is improper and legally untenable.

## ARGUMENT

## I. THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE PLAINTIFFS FAIL TO PLEAD A SUFFICIENT BASIS FOR RECOVERY UNDER THE MSP ACT.

Plaintiffs' two causes of action are based on the MSP Act and its implementing regulations, both of which require them to allege and prove not only that Defendants had a responsibility to make a payment but also that Defendants are liable for those payments.  In other words, the MSP Act requires the Plaintiffs to first allege that the Defendants had a responsibility to pay for an item or service.  42 U.S.C. § 1395y(2)(B)(ii) (emphasis added).  While this might be done by alleging the presence of a contractual obligation, Eleventh Circuit law also requires the Plaintiffs to assert a factual basis for responsibility on the part of the Defendants for those payments.  In other words, merely alleging there is a contractual obligation is not enough; Plaintiffs must also allege in the pleadings that the Defendants' valid insurance contracts actually render them responsible for the expenses Plaintiffs are trying to recover.  *MSP Recovery v. Allstate Insurance Co.*, 835 F.3d 1351, 1361 (11th Cir. 2016) (while a "contractual obligation may serve as sufficient demonstration of responsibility for payment to satisfy the condition precedent to suit under the MSP Act," Plaintiffs still have the "burden to allege in their complaints, and then subsequently prove with evidence, that Defendants' valid insurance contracts actually render Defendants responsible for primary payment," and "Defendants may

still assert any valid contract defense in arguing against their liability."); *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764, 771 (11th Cir. 2020) (the "demonstrated-responsibility requirement is a prerequisite to filing a private lawsuit under [the MSP Act]."); *Ocean Harbor Cas. Ins. v. MSPA Claims, 1*, 261 So. 3d 637, 645 (Fla. 3d DCA 2018), *pet. for review denied* (Fla. S. Ct. Oct. 31, 2019) (same principle); *IDS Prop. Cas. Ins. Co. v. MSPA Claims 1, LLC,* 263 So. 3d 122, 124 (Fla. 3d DCA App. 2018) (same).

Here, Plaintiffs' Complaint is devoid of any non-conclusory allegations demonstrating Defendants' responsibility to pay anything.  The Complaint does not include any facts whatsoever related to any enrollee, the amount charged to Plaintiffs' alleged assignors or amounts they supposedly paid, what exactly any such payments were for, what treatment was provided, what exactly was supposedly covered and not paid by Defendants, or what coverage determinations were made by Defendants.  Plaintiffs have simply attached as Exhibit A to their Complaint a list of what purports to be claims that Defendants reported to CMS/Medicare. Compl. Exhibit A & ¶¶ 48-49.  Just because Defendants reported a claim to CMS, however, does not demonstrate Defendants' responsibility to pay for any particular medical expense.  Plaintiffs' Exhibit A, which is nothing more than a list of names, demonstrates nothing and is insufficient to assert a valid claim as a matter of law.  Indeed, there are many reasons Defendants may have no responsibility to pay, most notably because the subject charges were not reasonable, necessary or related to the relevant automobile accident.  *See, e.g., United Automobile Insurance Co. v. Millennium Diagnostic Imaging Center, Inc.,* 12 So. 3d 242, 245-46 (Fla. 3d DCA 2009).  Unless and until Plaintiffs allege facts, not bald conclusions, showing Defendants actually had an obligation to pay the particular disputed bills, which they have not done, Plaintiffs have failed to assert a valid claim as a matter of law.

Similarly, with respect to Plaintiffs' claims related to liability insurance, the mere fact that a settlement was reached does not demonstrate Defendants' responsibility to pay for any and all medical expenses.  As one court explained in this context, in "the event that the government does elect to seek reimbursement, it is incumbent upon the government to show how much money it is entitled to from a settlement fund."  *Mackrides v. Marshalls*, No. 11-CV-6540, 2013 WL 1755216, *5 (E.D. Pa. Apr. 24, 2013) (citations omitted).  Certainly, the Plaintiffs here (as assignees) are under no less of a burden than what would apply to the government.

In connection with settlements, the responsibility of a liability insurer to reimburse Medicare is defined by the scope of the settlement and the Medicare beneficiary's claim against the third party with whom the settlement is reached.  *See, e.g., Hadden v. United States*, 661 F.3d 298, 302 (6th Cir. 2011); *Taransky v. Sec'y of U.S. Dep't of Health & Human Servs.,* 760 F.3d 307, 315 (3d Cir. 2014).  *See also Weinstein v. Sebelius,* No. CIV. A. 12-154, 2013 WL 1187052, *1 (E.D. Pa. Feb. 13, 2013), *report and recommendation adopted*, No. CIV. 12-154, 2013 WL 1187048 (E.D. Pa. Mar. 22, 2013) (fact of settlement does not automatically demonstrate defendant's responsibility to pay anything; rather, examination of the terms of the settlement is required to determine the scope of Medicare's right to reimbursement); *Salveson v. Sebelius*, No. CIV. 10-4045, 2012 WL 1665424, *7-8 (D.S.D. May 11, 2012) (finding specific scope of settlement -- not the evidence produced in the case -- defined the scope of Medicare's right to reimbursement because Salveson expressly released certain claims at issue in the parties' settlement).  These authorities demonstrate that the mere existence of a settlement does not demonstrate a defendant's responsibility to pay.

Here, Plaintiffs' Complaint merely refers to "settlements" with unnamed Medicare beneficiaries and alleges no legally significant facts whatsoever regarding any actual settlement.

4

Plaintiffs' generic allegations do not include any of the following, all of which are necessary to properly state a claim: (1) What was claimed and released as part of the settlements; (2) Whether any and all claims related to the beneficiaries' purported accidents were asserted and released; (3) Whether the settlements included items for which an MAO made no conditional payment or which were unrelated to the accidents at issue; or (4) Whether the settlements at issue arose from a court order on the merits of a case which may have allocated portions of the settlement to non-medical losses (in which event there could be no MSP Act recovery).  *See, e.g., Bradley v. Sebelius,* 621 F.3d 1330, 1335-38 (11th Cir. 2010); *In the Case of Estate of M.S.W.*, Docket Number: M-10-1528, 2010 WL 7209446, *2 (H.H.S. Nov. 8, 2010).

*MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*, 974 F.3d 1305, 1309 (11th Cir. 2020) ("*Ace*"), *reh'g denied*, which will no doubt be heavily relied on by Plaintiffs, actually supports granting this Motion to Dismiss.  Critically, *Ace* did not purport to change or overrule the Eleventh Circuit's prior holding in *MSP Recovery,* which required plaintiffs to plead and prove demonstrated responsibility.  Even after *Ace*, then, a plaintiff must still plead facts, not just naked conclusions, regarding why an insurer supposedly has an obligation to pay the expenses in question.  But the Plaintiffs here have simply attached a list of names to the Complaint via Exhibit A; they never assert any facts to support their implication that Defendants actually have an obligation to pay the bills related to any of those names.  Accordingly, under *MSP Recovery*, which was not disturbed by *Ace*, Plaintiffs fail to state a valid MSP Act claim.

Notably, *Ace* said nothing about the propriety of first-party allegations in this context.  As to third-party liability settlement allegations, *Ace* merely noted how defendants with settlement agreements may have constructive knowledge of primary payment obligations.  This statement, however, was pure dicta and relied exclusively on *United States v. Baxter Int'l, Inc.*, 345 F.3d

866, 903 (11th Cir. 2003) ("*Baxter*").  But *Baxter* dealt with constructive knowledge in an entirely different context.  That case addressed whether a tortfeasor can defeat a subrogation claim by the government through paying a third party when it knew or should have known of the government's subrogation rights.  *Baxter,* 345 F.3d at 902.  That is obviously not the situation here.  Moreover, *Baxter* expressly declined to define the precise scope of the constructive knowledge that will trigger liability, in part because one of the parties had willfully blinded itself to pertinent facts related to the expenses at issue.  *Id* at 901-02.  So, under *Baxter*, it is not merely the existence of a settlement with a Medicare beneficiary that allows an MSP Act claim to proceed, but instead it is knowledge of the existence of a conditional Medicare payment that matters.  *Id.* ("either knowledge or constructive knowledge is sufficient.  *Thus, if the RSP Defendants had either knowledge or constructive **knowledge that some of the recipients of the funds they were paying out had received breast implant-related medical treatment for which Medicare already paid***, then the RSP Defendants would be liable to reimburse the Government pursuant to § 1395y(b)(2)(B)(iii).") (emphasis added).  *See also Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016) ("Western's attempt to list Humana as a payee on the settlement check indicates that Western knew of Humana's lien. . . . ***Western . . . had constructive knowledge of Humana's Medicare payment.***") (emphasis added).

Indeed, in its amicus brief in *Ace,* the government argued, quoting *Baxter,* that "[c]onstructive knowledge is established when a defendant 'has in its possession information necessary to draw the conclusion that Medicare has made such a payment' or 'willfully blinds itself' to such information."  *Ace,* Amicus Brief of United States, filed June 8, 2020, p. 18 n. 4 (copy attached as Exhibit A).  This shows that the government's own view is that a settlement with a Medicare beneficiary alone is insufficient -- rather, a defendant must actually have reason

to know of a conditional Medicare payment in order for constructive knowledge to exist. Just as the mere fact of a settlement is not enough to adequately plead and establish constructive knowledge, it is also insufficient to simply plead an insurer's supposed demonstrated responsibility without providing at least some minimal factual support.

Plaintiffs obviously realize *Ace* did not eliminate the need to plead facts showing demonstrated responsibility because they expressly, but unsuccessfully, attempt to plead around the issue. First, Plaintiffs erroneously allege that once an MAO makes a payment for medical items and services on behalf of its enrollees, the payment is conclusive proof that the items and services were reasonable and necessary (which therefore supposedly demonstrates that Defendants would be obligated to pay for such items and services). (Compl., ¶ 55.) However, this incorrect conclusion is directly contrary to controlling Eleventh Circuit law, as set forth in *MSP Recovery,* which holds that MSP Act plaintiffs must plead and prove that defendants' insurance contracts actually render them responsible for primary payment of the subject expenses. If actual facts regarding a conditional payment by a purported secondary payer, which Plaintiffs have not alleged here, were considered "conclusive proof" that a defendant insurer was responsible for paying the items and services at issue, the Eleventh Circuit could not have held, as it did in *MSP Recovery,* that plaintiffs asserting primary payer responsibility must still plead and prove the defendants' insurance contracts provided coverage for the expenses. In addition, Plaintiffs' "conclusive proof" allegation, taken to its logical conclusion, would require insurers to pay for unrelated, unreasonable, and unnecessary medical expenses. As a result, Plaintiffs' position is refuted by rulings from federal Courts of Appeal and district courts which have held that even if Medicare has made a payment, a primary insurer is not required to pay beyond what its policy or state law requires (*e.g.,* for unrelated, unreasonable or unnecessary medical

expenses).  *See Caldera v. Ins. Co. of the State of Pa.,* 716 F.3d 861, 864-66 (5th Cir. 2013); *California Ins. Guarantee Ass'n v. Burwell,* 227 F. Supp. 3d 1101, 1113-14 (C.D. Cal. 2017); *California Ins. Guarantee Ass'n v. Price,* 252 F. Supp. 3d 948, 956-57 (C.D. Cal. 2017).  Indeed, citing *Caldera,* the *Ocean* court flatly rejected the argument that an MAO is entitled to "automatic" reimbursement under the MSP Act.  *Ocean* expressly held, instead, that an MAO must plead facts demonstrating that it is entitled to recover no-fault benefits under the relevant state law.  *Ocean*, 261 So. 3d at 645-46.

In another attempt to get around their burden to plead and prove Defendants' responsibility to pay, Plaintiffs have argued that Defendants failed to administratively appeal the MAOs' rights to reimbursement and therefore are time-barred from challenging the propriety of the amounts paid.  (Compl., ¶ 82.)  Again, this bald legal conclusion is unfounded and does not cure the Plaintiffs' failure to sufficiently plead their cause of action.  Nothing in the relevant statutes or regulations supports Plaintiffs' position.  To the contrary, Medicare enacted a regulation allowing for appeals by certain applicable plans, including no-fault and liability insurers, in connection with reimbursement demands by Medicare where Medicare pays secondary to those plans, *but specifically declined to extend that appeal process to MAO reimbursement claims.  See* Medicare Program; Right of Appeal for Medicare Secondary Payer Determinations Relating to Liability Insurance (Including Self-Insurance), No-Fault Insurance, and Workers' Compensation Laws and Plans, 80 Fed. Reg. 10611, 10616 (Feb. 27, 2015). Significantly, the *Ocean* court has already considered and expressly rejected this same "administrative appeals" argument.  *Ocean,* 261 So. 3d at 647 (rejecting argument that "a primary plan had to exhaust administrative remedies before defending a claim that it was the responsible primary plan for a medical bill," because no case, statute or regulation allowed for

such appeals in this context).

In short, the Eleventh Circuit unambiguously requires MSP Act plaintiffs to plead and prove that the insurer is both responsible and liable for the alleged primary payments.  Here, the only pleading on that issue is Plaintiffs' Exhibit A, which is merely a bare list of names.  As a matter of law, this is insufficient to plead demonstrated responsibility, and on that basis alone the Complaint should be dismissed.

## II. PLAINTIFFS' CLASS ALLEGATIONS FAIL AS A MATTER OF LAW.

Alternatively, Plaintiffs' class action allegations should be dismissed because, as a matter of law, there are no common questions here sufficient to support class certification.  Rather, addressing Plaintiffs' claims will inherently involve predominating individualized assessments of the expenses at issue, which is wholly antithetical to the type of case that can constitute a valid class action.

Significantly, the Florida Court of Appeal reversed class certification in the substantively identical *Ocean* case, which ruling was also adopted by the *IDS* court, rejecting, as a matter of law, the notion that this type of case can be brought as a class action.  As noted, *Ocean* specifically rejected the theories Plaintiffs assert here, holding that Plaintiffs are not entitled to "automatic" reimbursement and that defendants do not waive the right to challenge a reimbursement claim simply because they did not exhaust non-existent administrative appeals. *Ocean*, 261 So. 3d at 645-46.  Rather, and as demonstrated above, a plaintiff in these types of cases must allege in its complaint, and subsequently prove with evidence, that the insurance contract at issue in fact renders the insurer responsible for primary payment of the expenses that plaintiff seeks to recover.  Additionally, defendants are entitled to assert any and all payment defenses they have in response to such claims.  *Id.*  As a result, class treatment is not viable as a matter of law here because of all the predominating individualized issues that will need to be

dealt with in order for Plaintiffs to demonstrate Defendants' responsibility to pay in each and every case. *See also MSP Recovery Claims, Series LLC v. Plymouth Rock Assurance Corp.*, No. 1:18-CV-11702-ADB, 2019 WL 6791962, at *5 (D. Mass. Dec. 12, 2019) (dismissing class allegations because there would have to be an individualized review of each claim to determine whether the defendant insurer had any responsibility to pay anything).

Courts can and should dismiss legally deficient class action allegations at the pleadings stage. *See, e.g., Saunders v. BellSouth Advert. & Pub. Corp.,* No. 98-1885-CIV, 1998 WL 1051961, *1 (S.D. Fla. Nov. 10, 1998) (granting motion to dismiss class action allegations and rejecting argument that doing so was procedurally improper); *Vandenbrink v. State Farm Mut. Auto. Ins. Co.,* No. 8:12-CV-897-T-30TBM, 2012 WL 3156596, *3 (M.D. Fla. Aug. 3, 2012) (same principle). *See also Hill v. Wells Fargo Bank, N.A.,* 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) (same); *Bearden v. Honeywell Int'l, Inc*., No. 3:09-01035, 2010 WL 1223936, *9 & n. 13 (M.D. Tenn. Mar. 24, 2010) (same). To survive this type of motion to dismiss, a plaintiff must plead facts sufficient to demonstrate that all the prerequisites of Fed. R. Civ. P. 23(a) and (b) are met. Courts routinely dismiss class action allegations where, as here, a complaint fails to plead the minimum facts necessary to satisfy these class action prerequisites. *See, e.g., Saunders,* 1998 WL 1051961, *2; *Vandenbrink*, 2012 WL 3156596, *3; *Alaska Airlines, Inc. v. Carey*, No. 07-5711, 2008 WL 2725796, *6 (W.D. Wash. July 11, 2008), *aff'd,* 395 Fed. App'x 476 (9th Cir. 2010); *Lumpkin v. E.I. Du Pont de Nemours & Co*., 161 F.R.D. 480, 481-82 (M.D. Ga. 1995); *Advanced Acupuncture Clinic, et al. v. Allstate Ins. Co., et al*., No. 07-4925, 2008 WL 4056244, *15 (D.N.J. August 26, 2008), *aff'd on other grounds,* 2009 WL 2171221 (3d Cir. July 22, 2009).

Where individualized issues necessarily predominate over common ones, a case cannot proceed as a class action under Rule 23(b)(3). For example, in *Saunders*, the court dismissed the

class allegations because, as here, the "individualized factual inquiries predominate over any class-wide issues," and therefore "the Plaintiffs' class allegations fail under Rule 23(b)(3) as a matter of law." *Saunders*, 1998 WL 1051961, *2.  In *Vandenbrink,* class allegations were similarly dismissed because "The issues will include the damages incurred by an individual plaintiff, the amount of the settlement, and the portion of the settlement that actually was for medical payments….[T]he individual factual inquiry will predominate this litigation, making any sort of class litigation highly impractical…." *Vandenbrink*, 2012 WL 3156596, *3.

Applying the above principles here, Plaintiffs' class action allegations should be dismissed because these allegations cannot, as a matter of law, satisfy the predominance of common issues factor that class actions require.  To explain, Plaintiffs' liability theory is that Defendants allegedly failed to reimburse Plaintiffs and the putative class the full amount supposedly due for "conditional payments" they purportedly made as secondary payers.  This necessarily requires numerous individualized determinations for each and every class member with respect to each and every one of the medical expenses being claimed.  Importantly, courts have often found the reasonableness and necessity of medical expenses to be inherently individualized, making class action treatment inappropriate.  Indeed, that is what led the *Ocean* court to reject class action treatment in this very context, stating: "Proof that certain medical bills paid by MSPA's alleged assignor should have been paid by Ocean Harbor as a primary payer will not establish that other medical bills paid by a different MAO should also have been paid by Ocean Harbor as a primary payer.  To the contrary, proof to establish liability will necessarily devolve into a series of mini-trials . . . which precludes a finding of predominance and renders this case inappropriate for class action treatment."  261 So. 3d at 639 (citation omitted).  The quote above makes it eminently clear that the court's ultimate ruling was that, as a matter of law,

this sort of case can never proceed as a class action. *See also DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 271 F.R.D. 676, 683-84 (S.D. Fla. 2010), *aff'd*, 469 Fed. App'x 762 (11th Cir. 2012) (class action treatment inappropriate where, among other things, each putative class member would have to establish that treatment was medically necessary and the charge therefor was reasonable); *Premier Open MRI v. Allstate Ins. Co.*, No. 16-2003-CA-004498, 2005 WL 6058681, *1 (Cir. Ct. Duval Cty. Fla. Jan. 7, 2005) (same). Indeed, courts across the country have consistently and uniformly reached the same conclusion. *See, e.g., Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 779 (8th Cir. 2013); *Advanced Acupuncture*, 2008 WL 4056244, *13; *Gloria v. Allstate County Mut. Ins. Co.*, C/A SA-99-CA-676-PM, 2000 WL 35754563, *9 (W.D. Tex. Sept. 29, 2000); *Ross-Randolph v. Allstate Ins. Co.*, No. DKC-99-3344, 2001 WL 36042162, *6 (D. Md. May 11, 2001); *Johnson v. GEICO Cas. Co.*, 310 F.R.D. 246, 255 (D. Del. 2015), *aff'd*, No. 16-1132, 2016 WL 6958431 (3d Cir. Nov. 29, 2016); and *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 531 (D. Md. 2001). For example, in *DWFII*, 271 F.R.D. at 683-84, the court held that issues involving the reasonableness and necessity of medical treatment inherently require individualized analysis, and thus are plainly not suitable for class treatment:

> [R]egardless of whether State Farm followed a policy of automatically applying NCC edits to every bill, State Farm has the right and ability to introduce individualized evidence to prevail on each breach of contract claim. Each putative class member, for each alleged underpayment, *i.e.* each alleged breach of contract, will have to prove the following details about its entitlement to reimbursement: that the insured had valid insurance coverage and his benefits were unexhausted, that the provider actually performed the services for which it billed; *that the treatment(s) the provider performed was "medically necessary" pursuant to section 627.736(1)(a), that the provider billed for "reasonable amount[s]"* pursuant to section 627.736(5)(a), and that the bill the provider submitted was properly completed pursuant to section 627.736(5)(d). There are no common issues of fact that relieve

12

> each plaintiff of a substantial portion of this individual evidentiary
> burden.

(Emphasis added.)

For similar reasons, a Florida appeals court reversed a trial court's ruling that a PIP insurer could not decline to pay less than the full amount of a medical bill based in part on a computerized bill review. *State Farm Mut. Auto. Ins. Co. v. Sestile*, 821 So. 2d 1244 (Fla. 2d DCA 2002) ("*Sestile*"). The *Sestile* court found it was "not a court's function to determine, across the board, that an insurer's internal method of gauging reasonableness does or does not comply with the statute." *Id.* Rather, a fact-finder would need to determine, on a case-by-case basis, whether the insured met its burden to prove that each bill was reasonable and that the insurer failed to pay a reasonable amount:

> The fact-finder must construe the word 'reasonable' and determine whether the insurance company's evaluation of medical bills fits the definition on a case-by-case basis…. If an insurer refuses to pay medical expenses that an insured believes are reasonable, the insured may sue, but he or she bears the burden of establishing that the charges are, in fact, reasonable. In some cases, a computer database may accurately assess the reasonableness of a medical provider's bill; in other cases, it may be far from the mark. But this is the insured's burden to prove.

*Id.* at 1246 (citations omitted).

Applying *Sestile*, another court dismissed the class action allegations in a case where the plaintiff challenged the method the insurer used to determine the appropriate amount to pay for PIP benefits. *MRI Associates of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 1208 (M.D. Fla. 2010). Because what constituted a reasonable amount would vary "based on many factors specific to the individual claim," the court found "[t]he evaluation of a reasonable amount rests on an examination of the various factors on a case-by-case basis and can only be determined by a factfinder." *Id.* Further, "different fact-finders may reach different

13

conclusions from the same facts." This inherent need for individualized evaluation, the court found, "is exactly why the court in *Sestile* held these types of cases were not appropriate for a class action proceeding." *Id.*

Likewise, in *Gloria*, the plaintiffs alleged the defendant insurer improperly reduced medical bills under PIP coverage by using a flawed medical bill review system. In dismissing the class action allegations, the court stated, in language equally applicable here (footnotes omitted):

> Conclusory class allegations, such as those pleaded by plaintiffs here, have been deemed suitable for dismissal early in the case. When plaintiffs' allegations are analyzed in light of the prerequisites of Rule 23, plaintiffs have not alleged common issues that predominate. Instead, issues such as whether a particular provider's charge was reasonable and/or necessary for a particular treatment for a particular injury in a particular location must be determined on an individualized basis. Each putative plaintiff would be required to prove entitlement to benefits under the terms of the policy and that the medical expenses were reasonable and the services were necessary. Moreover, even if plaintiffs prove the computerized evaluation of the PIP claims was flawed the parties and the court still will need to analyze each charge on every claim for reasonableness and necessity.

2000 WL 35754563 *9 (footnotes omitted).

The same types of issues which, again, are apparent from the face of Plaintiffs' Complaint, also preclude class action treatment here as a matter of law. For each and every putative class member, each and every medical bill, and each and every line item for which Defendants supposedly owe primary payments, a separate mini-trial would be required to determine whether the charge was reasonable and the treatment allegedly provided was medically necessary and related to the relevant automobile accident. Plaintiffs' claims as to third-party liability insurance raise even more predominating individualized issues. As demonstrated above, highly case-specific questions related to the terms of the underlying

14

settlement would have to be addressed for each putative class member. These case-specific questions would, at a minimum, include: (1) What was claimed and released as part of the settlements? (2) Were any and all claims related to the beneficiaries' purported accidents asserted and released? (3) Did the settlements include items for which an MAO made payment?

As also shown above, Plaintiffs cannot circumvent these predominating individualized issues with their "conclusive proof" and "administrative appeals" theories, which fail for all the reasons discussed *supra* at pp. 7-9. In all events, Plaintiffs allege only that an MAO's payment is conclusive proof of reasonableness and necessity, *not* of the relatedness of the expenses to the insured's accident. There would, therefore, be predominating individualized issues for every putative class member concerning whether each and every disputed medical transaction was related to the insured's relevant automobile accident: *e.g.,* (1) What health conditions did the claimant/beneficiary suffer?; (2) Was the expense at issue for treatment for an injury or condition wholly unrelated to the accident -- *e.g.,* cancer, arthritis, a prior surgery that had nothing to do with the insured's accident?; and (3) Was the charge at issue one for which an MAO made a conditional payment in connection with an accident? The above examples of the highly individualized issues that will have to be determined to resolve this case demonstrate that no class can be certified here because, as a matter of law, common issues will not predominate.

In addition to the numerous predominating individualized issues that would need to be addressed here on a claim-by-claim basis, Plaintiffs' class action strategy would still be blocked because, in light of their nationwide class allegations, resolving the alleged class members' claims would require analysis of various laws across multiple, different jurisdictions. As the Fifth Circuit recently emphasized, where "a proposed class stretches across multiple jurisdictions, we have underscored that a Rule 23(b)(3) analysis must carefully consider

15

variations in pertinent state laws." *Cruson v. Jackson National Life Ins. Co.*, 954 F.3d 240, 254, (5th Cir. 2020). The court further stated that variations in state law alone may swamp any common issues and defeat predominance, and failure to engage in an analysis of state law variations is grounds for decertification. *Id.* at 254-55 (further noting that the party seeking certification of a nationwide class must "provide an 'extensive analysis' of state law variations to reveal whether these pose 'insuperable obstacles.'") (quoting *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007)). *See also Castano v. Am. Tobacco. Co.*, 84 F. 3d 734, 741 (5th Cir. 1996) (same principle). To conduct a predominance inquiry, the Court must go beyond the pleadings and "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano,* 84 F.3d at 744 (district court must consider variations in state law when a class action involves multiple jurisdictions). *See also Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185, 194 (5th Cir. 2010) ("the court must find 'that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.' . . . In a multi-state class action, variations in state law may swamp any common issues and defeat predominance.") (citations, internal quotations and footnote omitted); *Stirman v. Exxon Corp.,* 280 F.3d 554, 564 (5th Cir. 2002) (district court abused its discretion in certifying multi-state class alleging lessee had breached implied covenant to market natural gas where district court's analysis did not take into account significant variations in state law that defeated predominance); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946-48 (6th Cir. 2011) (affirming trial court's granting of a motion to dismiss class allegations, largely on the basis that application of different states' laws would make it difficult and impracticable to

16

manage a class action); *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 628 (D. Kan. 2008) (finding since forum choice of law rules would likely dictate that the laws of each state would be applicable to prospective class members, this weighed heavily against typicality, as state law differences placed plaintiff's claims on a different legal footing and subject to different legal standards than the claims of other putative class members).

In *Casa Orlando*, even where the basic principles related to the applicable law were the same in all states, the court still found class action treatment inappropriate, stating: "the nuances vary, and those nuances affect the outcome of claims."  624 F.3d at 194-95.  Similarly, in *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. 14-2722, 2020 WL 444292, at *6 (E.D. La. Jan. 28, 2020), the court found state law variations precluded class certification:

> The Plaintiffs are domiciled in five different states, and accordingly their claims arise under five different states' laws and are subject to various applicable burdens of proof and defenses. The Court heeds the Fifth Circuit's warning that "[i]n a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Castano*, 84 F.3d at 741. Based on the variety in the individual claims and the fact that, were the cases to go to trial, they would involve different theories of liability, different state laws, different applicable defenses, and different damage calculations, the Court is not convinced that the common issues of liability predominate over the individual issues.

Applying the above principles, courts have routinely found nationwide or multi-state class treatment of claims arising from contracts, such as the insurance policies at issue here, unworkable.  *See, e.g., Marino v. Home Depot U.S.A., Inc.,* 245 F.R.D. 729, 735 (S.D. Fla. 2007) ("Florida contract law cannot apply to every potential class member on a nationwide basis. . . . [The] contracts were negotiated and entered into entirely in different states, each with its own law of contracts."); *Clausnitzer v. Fed. Exp. Corp.*, 248 F.R.D. 647, 654 (S.D. Fla. 2008) (same principle); *Karhu v. Vital Pharm., Inc.*, No. 13-60768-CIV, 2014 WL 815253, at *11 (S.D. Fla. Mar. 3, 2014), *aff'd*, 621 F. App'x 945 (11th Cir. 2015) (same); *McBride v. Galaxy Carpet Mills,*

17

*Inc.*, 920 F. Supp. 1278, 1286 (N.D. Ga. 1995) (same).

Here, the Plaintiffs would not be able to recover amounts from the Defendants in excess of their responsibilities under state law or the respective insurance contracts. *Caldera,* 716 F.3d at 865. Those claims would thus necessarily be governed by all the states' varying no-fault laws and insurance provisions, and courts have rejected nationwide class treatment for this very reason. For instance, in *Innovative Physical Therapy, Inc. v. Metlife Auto & Home*, No. CIV A 07-5446 (JAP), 2008 WL 4067316, at *10 (D.N.J. Aug. 26, 2008), *aff'd on other grounds sub nom. St. Louis Park Chiropractic, P.A. v. Fed. Ins. Co.*, 342 F. App'x 809 (3d Cir. 2009), the court stated:

> [T]he laws of each of the potential class members' home states conflict. PIP insurance coverage differs between states and are governed by statute. PIP statutes address issues such as specifying what type of medical expenses must be covered, what amounts insurers are obligated to pay, or whether insurers are permitted to coordinate their PIP payments for medical expenses with payments from other sources. A survey of the relevant PIP statutes indicates that differences, such as these, result in individualized issues.

These individualized issues, then, precluded class treatment as a matter of law. *Id; See also Advanced Acupuncture*, 2008 WL 4056244, at *11 (same principle).

While some courts have opted to defer ruling on class issues until after class discovery, such an approach would not be workable here. No amount of discovery, and nothing which could potentially be revealed during discovery, will obviate the highly case-specific and predominating individualized issues discussed above which exist as a matter of law. As a result, it makes no sense for the Court or the parties to expend the substantial time and resources that will be necessitated by full-blown class discovery and motion practice. In reality, the threat of a national class action coupled with extensive discovery is nothing other than a strategy to try and bludgeon the Defendants into settlement. In this regard, to allow this case to proceed in light of

the inherently individualized issues with which it is plagued would allow the very sort of *in terrorem* use of class certification proceedings which the Eleventh and other federal appellate Circuits have expressly disapproved. *See, e.g., Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276 (11th Cir. 2019) (referring to the "*in terrorem* character of a class action" because of the substantial discovery and other litigation costs and resulting pressure to settle even meritless claims caused to defendants thereby); *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 678 (7th Cir. 2009) (same principle).

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request the Court to enter an order dismissing this action in its entirety or, alternatively, dismissing the class action allegations.

Respectfully submitted,

GUNSTER
600 Brickell Avenue, Suite 3500
Miami, Florida  33131
Telephone:  305-376-6000
Facsimile:  305-376-6010
acortinas@gunster.com
*Counsel for Defendants*

By:  /s/ Angel A. Cortiñas
      Angel A. Cortiñas

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2020, the foregoing was filed using the Court's CM/ECF system and served via email or transmission of Notices of Electronic Filing generated by CM/ECF to all counsel of record by the Court's CM/ECF system.

By:  /s/ Angel A. Cortiñas